# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**BENJAMIN HOPPE,**
**on behalf of himself and**
**all others similarly situated,**

**Plaintiff,**

**v.**                                               **Case No. 25-CV-839**

**R.R. DONNELLEY & SONS COMPANY,**

**Defendant.**

## DECISION AND ORDER

### 1. Background

On June 12, 2025, Benjamin Hoppe filed this action asserting claims under the Fair Labor Standards Act of 1938 (FLSA) and Wisconsin's Wage Payment and Collection Laws (WWPCL). He alleged that R.R. Donnelley & Sons Company did not properly compensate non-exempt employees for overtime work because it failed to include bonuses in its calculation of the overtime rate. (ECF No. 1.) Before the court is the parties' "Joint Motion for Settlement Approval." (ECF No. 22.)

This action was filed as both a proposed collective action under the FLSA and class action under the WWPCL. The settlement proposes to resolve the action exclusively as an FLSA collective action.

### 2. Collective Actions

"[C]ollective actions are not subject to Rule 23 or mentioned in any other federal rule of civil procedure …." *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 877 (7th Cir. 2012); *see also Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA"). A collective action differs from a class action in that a person is a member of a collective action only if he opts in whereas a person is part of a class action unless he opts out. *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1046 fn. 1 (7th Cir. 2020). Because of this distinction, an FLSA collective action does not implicate the same sorts of due process concerns as a class action, thereby negating the need for many of the procedural protections such as those set forth in Rule 23. *See Hoaglan v. Grede Holdings LLC*, No. 20-cv-425-pp, 2022 U.S. Dist. LEXIS 122574, at *3-4 (E.D. Wis. July 12, 2022). While a class action requires notice, an opportunity to object, and a fairness hearing, courts routinely approve collective action settlements in one step. *See Ripper v. Area Disposal Serv.*, No. 20-1130, 2021 U.S. Dist. LEXIS 248578, at *7 (C.D. Ill. Oct. 6, 2021). Indeed, there is some uncertainty as to when a court must even approve a settlement of an FLSA collective action. *See Hoaglan*, 2022 U.S. Dist. LEXIS 122574, at *4; *but see Koch v. Jerry W. Bailey Trucking, Inc.*, 51 F.4th 748, 752 (7th Cir. 2022) (stating the court approval of an FLSA settlement "was necessary because a settlement is a contract, and the FLSA restricts one's ability to contract for wages below the minimum wage, so any settlement of an FLSA claim requires a judicial imprimatur"). Nonetheless, it is clearly established that "[a] district court has

2

wide discretion to manage collective actions." *Alvarez v. City of Chi.*, 605 F.3d 445, 449 (7th Cir. 2010) (citing *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 171 (1989)). And courts routinely require approval of collective action settlements. *Hoaglan*, 2022 U.S. Dist. LEXIS 122574, at *4 (citing cases).

The parties' proposed settlement more closely resembles a traditional class action settlement than certain collective action settlements. Rather than merely providing notice to members of the collective and allowing them to opt-in, the parties have identified the members of the collective, calculated their damages, and propose to mail a check to each person. Negotiation of the check would effectively constitute the person's consent to join the collective action and waiver of any FLSA claim.

In the context of this truncated procedure, the court finds that it must ensure the overall fairness of the proposed settlement and that members of the collective are adequately informed as to the nature and consequences of the settlement. Many of the same concerns that underly Rule 23—the inherent risk of cross-purposes among the parties, counsel for the collective, the representative plaintiff, and the members of the collective—permeate a collective action settlement such as this so that the court should closely scrutinize a proposed settlement. Thus, although not controlling, Rule 23 provides a helpful framework for compliance with this obligation. The court's ultimate obligation is to ensure that the settlement is "fair and reasonable." *Hoaglan*, 2022 U.S. Dist. LEXIS 122574, at *4 (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)).

Having reviewed the proposed settlement, the court finds that adequacy of the notice and the proposed service award (often referred to as an incentive award[1]) of $5,000 to the representative plaintiff merit further discussion.

### 3. Adequacy of Proposed Notice

Under the section captioned "How Was My Settlement Payment Determined and What Are the Taxes?" of the parties' proposed notice to collective members is the following:

> The parties have agreed to compromise their dispute resulting in the total amount that R.R. Donnelley will pay to the Collective Members of $37,772.50, inclusive of a negotiated amount for liquidated damages. This amount reflects the total amount that Collective Members are allegedly actually owed in overtime compensation during the statutory period had the additional compensation (i.e., bonuses) been properly included in Collective Members' regular rate of pay during workweeks when the Collective Member worked in excess of forty (40) hours. Your amount was determined by the parties based on your specific period (s) of employment with R.R. Donnelley, the amount(s) of additional compensation (i.e., bonuses) that you received, and whether you worked in excess of forty (40) hours in any workweek in which additional compensation (i.e., a bonus) was paid.

(ECF No. 22-1 at 4.)

The section is potentially misleading. Although it refers to the settlement amount including "a negotiated amount of liquidated damages," a reasonable person might not understand that this sum is only a fraction of the total liquidated damages that plaintiffs would obtain if they prevailed at trial. The concept of "liquidated damages" may be unfamiliar to many persons, and following this statement with

---

[1] The court refers to the award as a service award because this term better reflects the purpose underlying the award.

"[t]his amount reflects the total amount that Collective Members are allegedly actually owed in overtime compensation …" could lead a reasonable reader to mistakenly believe that he is obtaining by this settlement all he could hope to obtain if he brought his own action. The reality is that the settlement proposes he give up roughly 75 percent of the liquidated damages he otherwise might receive.

### 4. Service Awards Generally

Neither the FLSA nor Rule 23 makes any mention of a collective or class representative obtaining any sort of additional compensation for his role as a collective representative, *see Espenscheid*, 688 F.3d at 877, which raises the question of whether they are permissible at all. The Court of Appeals for the Eleventh Circuit concluded that service awards are forbidden. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1281 (11th Cir. 2021) (discussing *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020)). The Court of Appeals for the Second Circuit acknowledged that "[s]ervice awards are likely impermissible under Supreme Court precedent." *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 721 (2d Cir. 2023) (discussing *Trustees v. Greenough*, 105 U.S. 527, 537 (1881)). Nonetheless, it said that "practice and usage seem to have superseded *Greenough* (if that is possible)" and held that its own circuit precedent permitting the awards controlled. *Id.*

In the Seventh Circuit, service awards have long been approved. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). In fact, the prospect of a minimal service award is sufficient to give a collective member standing to appeal a denial of collective

certification even after settling his personal claim. *Scott v. Dart*, 99 F.4th 1076, 1082-84 (7th Cir. 2024) (discussing, in part, *Espenscheid*, 688 F.3d at 876-77).

Service awards are not bounties or finder's fees. *See Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 311 (6th Cir. 2016). "[I]ncentive awards are designed to compensate named plaintiffs for the costs incurred in performing their role as class representatives—costs above and beyond what they would bear as ordinary class members." *Scott*, 99 F.4th at 1082-83.

> These costs include the time and effort that named plaintiffs must spend learning about the case (class members must have enough familiarity with the case to satisfy the "adequacy" requirement of Rule 23(a)(4)); sitting for depositions; complying with discovery requests; monitoring class counsel; and reviewing and approving any proposed settlement agreements.

*Scott*, 99 F.4th at 1083 (citing 5 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 17:3 (6th ed., Nov. 2023 update); Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1305-06 (2006)). They also serve to compensate plaintiffs for the risks they plausibly face in the form of the defendant's costs if the case fails. *Scott*, 99 F.4th at 1083 (quoting *Espenscheid*, 688 F.3d at 876). And when the case is such that a fear of stigmatization or retaliation might deter a plaintiff from coming forward, a service award can overcome those concerns. *Id.*

The service award must be tethered to the actual service the plaintiff performed and risks incurred. "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the

amount of time and effort the plaintiff expended in pursuing the litigation." *Cook*, 142 F.3d at 1016. This methodology may produce sizable service awards. *See Chieftain Royalty Co. v. SM Energy Co.*, 100 F.4th 1147, 1168 (10th Cir. 2024) (affirming $232,440 service award for class representative's more than 700 hours of work on the case). But when a case settles with minimal involvement from the representative plaintiff, the service award will likewise be minimal.

Because service awards are not authorized by any Rule or statute, courts have disagreed as to how to characterize them. Some courts have characterized service awards as "essential case-specific expenses." *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992). Thus, a service award is authorized under Rule 23(h) in a class action and under 29 U.S.C. § 216(b) in an FLSA collective action. *See Espenscheid*, 688 F.3d at 877.

Other courts and commentators suggest that a service award is not a separate pot of money but rather reflects the named plaintiff's share of the common fund. *See* Source of incentive awards, 5 Newberg and Rubenstein on Class Actions § 17:5 (6th ed.) ("Courts regularly approve incentive awards that are withdrawn from the common fund at the conclusion of the common fund case. Taking incentive awards from the common fund means that the class members are paying the incentive awards, or to be more precise, that the absent class members' recoveries are diminished a small amount to pay the costs incurred by the class representatives.").

Nonetheless, parties often structure settlement agreements so that the service award will appear independent from the payment to the collective. For example, the parties' settlement agreement states:

> The substance of Plaintiffs application for a Service Award is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the Settlement and this Agreement. The outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion. Any Service Award money not approved by the Court shall remain with the Defendant.

(ECF No. 22-1.)

The parties obviously cannot require the court to consider the service award separately from the overall agreement. But even if the court was to accept the view that an incentive award in an FLSA action can be technically characterized as expense independent of the collective fund, pragmatically from a defendant's perspective a settlement represents a single sum. Aside from instances where the collective stands to obtain in a settlement all that it could hope to obtain through litigation, a service award to a collective representative will always create tension between the named plaintiff and the collective members. As a discretionary and somewhat arbitrary sum, regardless of how it is characterized, a court's assessment of a service award can never be fully independent of the overall settlement agreement.

### 5. The Parties' Settlement

The defendant has agreed to settle the claims of the 1,316 prospective members for $37,722.50, which works out to an average recovery of $28.66 per member. Counsel calculated that the unpaid overtime wages owed to the collective members

total $30,218. Yet, the FLSA authorizes plaintiffs to recover both the amount owed and an additional sum equal to the amount owed in liquidated damages, *see* 29 U.S.C. § 216(b). Thus, the settlement represents only roughly 25 percent of the liquidated damages that the collective members would be entitled to recover if they prevailed at trial. If the service award was reduced to $500 and the $4,500 reallocated to the collective, collective members would receive roughly 40 percent of the liquidated damages counsel has calculated they would be entitled to at trial.

Aside from noting that service awards are permitted in the Seventh Circuit, plaintiff's counsel offers only the following explanation as to the propriety of the proposed inventive award: "Here, Plaintiff's Service Award in the amount of $5,000.00 is reasonable, in line with, and similar to other service awards approved by this District in multi-plaintiff FLSA collective cases. (*See, e.g.*, Luzi Decl. ¶ 13.)" (ECF No. 23 at 13.) In counsel's declaration, he provides a list of 32 cases. Notably absent from that list is the amount of the service award the court approved in each case or details as to the nature and extent of the services the representative plaintiff performed for the collective.

The settlement agreement states that Benjamin Hoppe's pro rata share of the common fund is $73.15. (ECF No. 22-1 at 33.) With the average collective member standing to receive $28.66, what costs did Hoppe incur in his role as representative plaintiff—"costs above and beyond what [he] would bear as [an] ordinary [collective] member[],"—that merits him receiving, in addition to his pro rata share of the settlement fund, compensation that is more than 174 times what the average

collective member stands to receive? *See Scott*, 99 F.4th at 1083. The court held a telephonic hearing for counsel to provide this information.

Counsel stated that Hoppe did not participate in any discovery. Indeed, there was no "formal discovery," but merely the informal exchange of records among the parties. Counsel stated that cases such as this, which arise from disputes over the overtime rate in light of bonuses, tend to resolve quickly and without discovery.

The court is certainly not critical of the quick resolution; the court and the parties should always strive for "the just, speedy, and inexpensive determination of every action and proceeding." *See* Fed. R. Civ. P. 1. The court would never approve an enhanced service award (or attorney fees) that was the result of needlessly protracted litigation. But as to Hoppe's role in this resolution, counsel did not describe anything that Hoppe did in service to the collective in terms of time, effort, or risk. Rather, counsel's argument that the service award was appropriate in this case was based on two factors (1) courts have approved similar awards; and (2) the case resulted in a good outcome for the collective.

## 6. Analysis

### 6.1. Other Service Awards

Service awards in other actions provide, to some degree, an anchor for assessing the appropriateness of a proposed service award. However, it is a factor that must be viewed with caution. Absent details as to the circumstances of the case or the specific services the representative rendered to the collective to garner a particular service award, a raw figure is of little relevance. Moreover, such analysis

can quickly lead to a snowball effect whereby courts approve slightly larger and larger numbers based on the premise that they are close to figures approved by preceding courts.

Insofar as counsel, by his declaration, is suggesting that a $5,000 service award is standard (*see* ECF No. 24, ¶ 13), fixing any sort of standard service award would be inconsistent with the court's obligation to ensure that a service award is tied to the plaintiff's actual service to the collective and is not a mere bounty. More significantly, a review of the cases cited by counsel in his declaration reveals that a $5,000 service award is unusually high. Of all cases cited, the median award was $2,500.[2] The mean was about $2,800. The awards ranged from $500 (three cases) to $10,000 (one case). Only six of the 31 cases involved awards of at least $5,000 and only three of those involved awards of more than $5,000. In the three cases where the awards were greater than $5,000, in two instances the filings indicated that the service award was attributable to the fact that the named plaintiff was offering a general release of all claims. For example, in the FLSA collective action case where the court approved a $10,000 service award, the settlement agreement noted that the plaintiff agreed to release her claim under the Family and Medical Leave Act.[3]

The court, however, must underscore that it would not reach a different conclusion if counsel had simply chosen a different sample of cases to produce a mean

---

[2] One case number in counsel's declaration was incorrect and therefore disregarded. The court's analysis relates to the 31 correctly identified cases.

[3] This is not to suggest that a class representative granting a general release necessarily entitles him to an increased service award. There must be an articulated good faith claim that the plaintiff is releasing. Parties cannot simply include a general release and expect an increased service award.

service award of $5,000. *Cf. Ackley v. Marathon Cheese Corp.*, No. 22-cv-232-jdp, 2024 U.S. Dist. LEXIS 156875, at *12 (W.D. Wis. Aug. 30, 2024) (declining to approve $20,000 service award and noting "the typical service award in this court is $5,000 or less"). Again, absent details as to the representative's specific service to the collective, the bald amount of a service award is of minimal relevance. Moreover, as a matter that involves significant and multi-faceted discretion, a court's approval of a settlement that includes a particular service award does not necessarily reflect the court's reasoned conclusion that the sum appropriate. Rather, approval of a collective action settlement reflects merely the court's conclusion that the settlement as a whole is fair and reasonable.

## 6.2. Recovery to the Collective

While the degree of success obtained is a factor for calculating attorney fees under the lodestar method, *see Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983), it has minimal relevance to calculating an appropriate service award. There are at least three ways to view the success of the action: (1) the total dollar amount recovered; (2) the dollar amount recovered for each collective member; and (3) the amount recovered relative to the best-case-scenario recovery at trial.

Relying too heavily on the first two circumstances stands to turn a service award into a mere bounty. It rewards a plaintiff who simply lends his name to an action that proves lucrative. A representative plaintiff's service award, however, is not intended to be akin to whistleblower's bounty in a qui tam action. *See Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 772 (E.D. Pa. 2016); *see also Robles*

*v. Brake Masters Sys., Inc.*, No. CIV 10-0135 JB/WPL, 2011 WL 9717448, at *17 (D.N.M. Jan. 31, 2011) (noting that Congress chose not to rely on bounties as a means for enforcing the FLSA; "The courts must be careful not to second guess Congress' selection through incentive awards, thereby illegitimately transforming the underlying substantive law from a compensatory model to a bounty hunter model").

Similarly, the third method—the amount recovered relative to a best-case scenario—is often unrelated to any action by the representative plaintiff. It also stands to result in disproportionate service awards in small value collective actions. For example, consider a collective action comprised of 100 workers, each allegedly owed $20 in overtime wages. A defendant may well choose to quickly settle such an action for full value of $4,000 (($20 unpaid wages + $20 in liquidated damages) × 100 employees) to avoid expensive litigation. If degree of success was given significant weight, this sort of nuisance value settlement would stand to merit a service award greater than the $5,000 sought here. Such a result would be obviously unreasonable.

Over-emphasis on the collective's degree of success to fix an appropriate service award also tends to overlook the fact that, regardless of how characterized, the recovery to the collective and the service award pragmatically come from a single pot of money. As a result, there is an inherent tension between the collective's success and the service award. It is a zero-sum equation. Decreasing the service award increases the collective's recovery, which if the collective's recovery is given significant weight, should stand to increase the service award. As noted here, decreasing the service award to the $500 awarded in other cases results in the

collective receiving 40 percent of the liquidated damages the plaintiff asserts they are entitled to.

This is not to suggest that the degree of success, by whatever measure, is irrelevant to the amount of the service award. A plaintiff whose actions result in relief for a vast collective of individuals, remedies a significant injury to each collective member, or obtains by settlement all that collective members could hope to obtain at trial performs a greater service to the collective than a plaintiff in contrary circumstances. And "the degree to which the [collective] has benefitted from" the actions of the representative plaintiff is a relevant factor. *Cook*, 142 F.3d at 1016. Conversely, a small collective award may make an ordinarily acceptable service award unreasonable. A service award must be a function of the service and not strictly a product of the dollar value of the settlement or a ratio of the plaintiff's home run trial estimate.

### 6.3. The Plaintiff's Service to the Collective

Service awards are primarily compensatory. *See Scott*, 99 F.4th at 1082-83. As such, service must be at the heart of any service award. Any request for a service award must be supported by specific details as to the service that the collective representative provided the collective. Secondarily, they act to induce "an individual to participate in the suit." *Roberts v. Graphic Packaging Int'l, LLC*, No. 3:21-cv-00750-DWD, 2024 U.S. Dist. LEXIS 122323, at *18 (S.D. Ill. July 11, 2024) (quoting *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 834 (7th Cir. 2018)).

Instead of what he did, the court has been offered only a long list of what Hoppe did not do. Hoppe did not participate in any discovery; there was no discovery. There is no evidence that he was materially involved in settlement discussions. There is no evidence that his representation agreement with counsel left him responsible for costs if he did not prevail or the defendant's attorney fees if the actions was deemed frivolous, and thus no evidence that he assumed any material risk in bringing this action. There is no evidence as to how this action arose. Did Hoppe identify his claim and seek out counsel? Or did other circumstances bring him into contact with counsel and it was counsel who then investigated and recognized his claim?

Hoppe having failed to present any facts as to the nature or extent of the service he provided to the collective, the court must presume that he had the bare minimum of involvement in this action. This would include an initial meeting with counsel, some discussions as to the settlement, and perhaps a few emails or phone calls with counsel during the case advising him as to its status; a total of perhaps a few hours. As the cases cited by counsel demonstrate, courts have approved service awards of $500 in similar cases.

There is also a question of what role, if any, a plaintiff's subjective motivation for pursuing an action should play in calculating the reasonableness of a service award. Again, one purpose of a service award is to induce a plaintiff to bring an action that will benefit his coworkers and enforce the FLSA. Perhaps a person like Hoppe who stands to recover only $73, might not wish to be a named plaintiff, even if he will be fairly compensated for his time. This is particularly so if the named plaintiff

remains a current employee of the defendant and thus fears ostracism, loss of goodwill, or retaliation.

But if circumstances that may make a person reluctant to serve as a representative plaintiff may enhance a service award, what then about the disgruntled former employee? Such an employee may need no incentive to bring suit, content in knowing that his actions cost his employer tens of thousands of dollars. *Cf. In re Synthroid Mktg. Litig.*, 264 F.3d 712, 723 (7th Cir. 2001) (noting that if a representative plaintiff would step forward without the lure of an incentive award, no additional compensation is necessary).

Again, the court has no information as to Hoppe's circumstances and thus cannot find that the large service award is a necessary to have reasonably induced him to pursue this action.

### 6.4. Conclusion

During the teleconference, plaintiff's counsel referred to Chief Judge Pepper having approved an award in similar circumstances. Although counsel did not identify that case, it appears that counsel was referring to *Benoskie v. Kerry Foods, Inc.*, 2020 U.S. Dist. LEXIS 177538, 2020 WL 5769488. A few points stand out. First, the court observed "the $5,000 service award seems a bit high to the court." *Id.*, 2020 U.S. Dist. LEXIS 177538 at *12. Second, the collective recovered 150 percent of the unpaid overtime wages. *Id.* The collective here stands to recover only 125 percent. Third, the court made no mention of the actual time, effort, or risk that the collective

16

representative undertook. As such, *Benoskie* does not support the present proposed service award.

The parties' proposed settlement affords a good recovery for collective members in terms of balancing the likelihood of success at trial against the risks and burdens of further litigation. However, there is no evidence that this degree of success had any relationship to Hoppe's actions. The recovery per collective member is relatively small. This action did not correct an egregious wrong but rather related to a more technical violation of the wage and hour laws.

Hoppe's minimal service to the collective may support a service award of $500. A plaintiff who devotes three hours to the action—time enough for an initial meeting with counsel, periodic updates, and review of a proposed settlement—would be compensated about $167 for each hour spent on the action. Compensation at $167 per hour would seem sufficient to encourage the average worker to step forward and litigate meritorious wage-and-hour claims. Thus, it would appear to fulfill the core purposes underlying service awards.

However, strictly applying an hourly rate approach to service awards would be inappropriate. The choice of the hourly rate is somewhat arbitrary. The hourly rate method could create perverse incentives for collective representatives to protract and over-litigate cases to boost service awards. It could create inequitable awards in cases of minimal recoveries. It would be necessary to adjust the hourly rate to account for instances where the collective representative's actions resulted in a particularly favorable outcome for the collective. And a strict hourly rate increases the risk of a

service award amounting to an impermissible "salary." *See Scott*, 99 F.4th at 1087 (quoting *Greenough*, 105 U.S. at 538 (1881)). Thus, the hourly-rate method is only one means by which to measure whether a service award is appropriate. Here, it underscores the inequity of the proposed service award. Given Hoppe's minimal service to the collective, the proposed service award would appear to result in him being compensated at well over $1,000 per hour.

The court declines to simply fix what it concludes is the appropriate service award. Indeed, it is unclear whether the court has the authority to simply fix an appropriate service award in a collective action. *But cf. Camp Drug Store*, 897 F.3d at 834-35 (finding no abuse of discretion when court reduced agreed $15,000 service award to $1,000 in a class action). The parties are the masters as to the details of their settlement; the court's role is to ensure its overall reasonableness and fairness. And reasonableness and fairness are principles that encompass a wide range of potential outcomes.

The court finds only that the proposed settlement is unreasonable. As noted, that conclusion is based in large part on the absence of any relevant information in the record as to anything that Hoppe did in service to the collective or addressing many of the other relevant circumstances discussed here. If Hoppe's service was minimal, a minimal award is likely appropriate. If Hoppe performed significant service to the collective or bore certain risks, a somewhat greater award may be warranted. But based on the record before the court, the proposed $5,000 service

award is so lacking in support that it renders the proposed settlement agreement unreasonable.

**IT IS THEREFORE ORDERED** that the parties' "Joint Motion for Settlement Approval" (ECF No. 22) is **denied**.

Dated at Green Bay, Wisconsin this 30th day of June, 2026.

*s/ Byron B. Conway*
BYRON B. CONWAY
U.S. District Judge